IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wellington Spencer Coppess,<br><br>    Plaintiff,<br><br>vs.<br><br>Officer French, et al.,<br><br>    Defendants. | No. CV 03-121-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. For the reasons stated below, Plaintiff's motion is denied and Defendants' motion is granted.

### I. Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *See id.* at 252. In determining a

1  motion for summary judgment, all reasonable inferences from the evidence must be drawn
2  in favor of the nonmoving party. *See id.* at 252. Even though the parties have filed cross-
3  motions for summary judgment, the Court must consider each motion separately to determine
4  whether any genuine issue of material fact exists. *See e.g., Starsky v. Williams*, 512 F.2d
5  109, 112 (9th Cir. 1975).

## II. Background

On March 10, 2002, at approximately 1:50 a.m., Wellington Spencer Coppess ("Coppess") was traveling eastbound on Prince Road approaching Mountain Avenue in Tucson, Arizona. Coppess was legally drunk at the time with a blood alcohol level of approximately 0.117. The posted speed limit on the road was 35 m.p.h., but Coppess was traveling approximately 50 m.p.h. over the speed limit at a rate of speed of 85 m.p.h. At the same time, a second car with three occupants was traveling westbound on Prince Road and was in the process of attempting to make a left turn onto Mountain Avenue; among the three occupants were Christian Judge (a 14 month old boy) and Sevet Judge (Christian's mother). While the second car was attempting to make a left turn, Coppess' car slammed head on into the second car. The two adult occupants sustained serious injuries, and the 14 month old boy was killed. After the mangled cars came to a stop, Coppess exited his vehicle, failed to render any assistance, and fled the scene of the crime; a witness heard Coppess state that he didn't want to go back to jail.

Tucson Police Department ("TPD") officers arrived at the scene minutes later. They were apprised of the pertinent facts, were given a description of Coppess, and began searching in the dark for Coppess in a residential area. Officer David George French and his service police canine assisted in the search; Officer French's canine was trained to find missing people and to otherwise find suspects who have fled from the scene of a crime. Witnesses informed TPD officers that Coppess was wearing a bomber jacket. In the course of his search, Officer French found a discarded bomber jacket stuck on a fence. Officer French's canine continued leading him in the direction of Coppess' scent, and an individual in the area also informed officers that he saw Coppess run onto an area of his property.

Officer French was led by his canine to a parked car which was surrounded by debris; Coppess was attempting to hide either on the side or underneath the car. Officer French allowed his canine to lunge into Coppess' hiding spot to subdue him, Coppess was bitten several times (i.e., on his left side, left forearm, and buttocks) by the canine while in the hiding spot, and Officer French was simultaneously ordering Coppess to come out from his hiding spot and to put his hands up. Thereafter, Coppess was apprehended, and subsequently convicted of second-degree murder for the reckless killing of the 14 month old boy. Coppess has not introduced any admissible evidence to dispute the material facts in this case. Arising out of these circumstances, Coppess sued the City of Tucson, the TPD[1], and Officer French for excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. §1983.

**III. Discussion**

    **A. Excessive Force–Individual Liability and Municipal Liability**

To establish individual liability in a §1983 case, Coppess must show that the individual officers personally participated in the alleged deprivation of constitutional rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monnell V. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). As to the individual liability of those in supervisory positions, they can be held liable only if they were either personally involved in the alleged constitutional deprivation or there was a sufficient causal connection between the supervisors conduct and the alleged violation. *See id.* To establish municipal liability, the Plaintiff must show that the alleged constitutional violation was attributable to some official policy or custom of the government entity. *See Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). There is no *respondeat superior* liability under § 1983. To establish municipal liability, Coppess must show that the alleged constitutional violation was attributable to some official policy or custom of the government entity. *See Larez v. City of Los Angeles*, 946

---

[1] The TPD was previously dismissed from this case. As such, Coppess' claims for individual and municipal liability are only relevant to Officer French and the City of Tucson.

1  F.2d 630, 645 (9th Cir. 1991). In *Monnell v. New York City Dept. of Social Services*, 436 U.S.
2  658 (1978), the Court held that local governmental entities could be held liable under §1983
3  for deprivations of federal rights. However, municipalities can not be held liable pursuant
4  to the doctrine of respondeat superior. *See id.* at 691. Municipal liability therefore can not
5  be imposed "vicariously on government bodies solely on the basis of an employer-employee
6  relationship with a tortfeasor." *Id.* at 692. A municipality may be held liable only if the
7  constitutional violation was caused pursuant to an "official policy" of the municipality. This
8  requirement is "intended to distinguish acts of the municipality from acts of employees of the
9  municipality, and thereby make clear that municipal liability is limited to action for which
10 the municipality is actually responsible." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 480
11 (1986)(emphasis in the original).

> A Plaintiff suing under §1983 may establish municipal liability in the following ways: First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity . . . Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy . . . Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

18 *See Gillette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992)(citations and internal
19 quotes omitted); s*ee also Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996); *Christie v. Iopa*, 176
20 F.3d 1231 (9th Cir. 1999). Lastly, a municipality could be held liable based on inadequate
21 training of its officers reflecting deliberate indifference to constitutional violations. *See City*
22 *of Canton v. Harris*, 489 U.S. 378, 387 (1989).

23         As a threshold matter, however, to even get to the question of individual (and the
24 related issue of qualified immunity) or municipal liability, Coppess obviously must show that
25 a constitutional violation occurred in this case; Coppess has failed to show any constitutional
26 violation. As Plaintiff has not created an issue of fact as to a constitutional violation, there
27 is neither personal or municipal liability in this case under §1983. *See Scott v. Henrich*, 39
28 F.3d 912, 916 (9th Cir. 1994).

An alleged constitutional violation based on excessive force is subject to the constraints of the Fourth Amendment. *See Monroe v. City of Phoenix, Arizona*, 248 F.3d 851, 861 (9th Cir. 2001). "Under the Fourth Amendment, police may only use such force that is objectively reasonable under the circumstances." *Id.* (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . the calculus of reasonableness must embody the allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *See Graham v. Connor*, 490 U.S. 386, 396-397 (1989). Although "reasonableness traditionally is a question of fact for the jury, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d at 915. Further, the Ninth Circuit has stressed that:

> As the test of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the *least* intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the court in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment . . . Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct [a court] identif[ies] as reasonable.

*Scott*, 39 F.3d at 915.

Under the facts of this case, it is clear that the Officer French's actions in the apprehension of Coppess were objectively reasonable. Based on the information leading up to the arrest, Officer French had reason to believe that Coppess was a reckless and violent

1 criminal capable of causing grave harm both to the public and police officers that came into
2 contact with him. The TPD had information that Coppess was driving under the influence
3 at approximately 85 m.p.h. when he smashed into a car containing three occupants; Coppess'
4 reckless conduct caused serious injuries to two adults and killed a 14 month old boy.
5 Further, the TPD knew that despite the horrific results of Coppess' reckless conduct,
6 Coppess nevertheless failed to render any assistance to his victims and simply fled the scene
7 of his serious crime. As such, TPD officers were forced to search in the dark for an
8 apparently reckless and dangerous suspect who was hiding from law enforcement in a
9 residential neighborhood at approximately 2:00 a.m. Thus, when Officer French and his
10 canine finally tracked Coppess down and found him hiding on the side or underneath a car
11 which obscured Officer French's view of him, Officer French acted reasonably and used
12 appropriate non-lethal force in allowing his canine to lunge into Coppess' hiding place to
13 subdue him. This force was reasonable as Officer French was presented with a volatile
14 situation as he encountered a likely reckless and dangerous suspect (who could have had a
15 weapon) hiding in the shadows after fleeing the scene of a serious crime; thus, for the
16 protection of himself and others against these potential dangers, the release of his canine into
17 Coppess' hiding spot whereby Coppess suffered several bite wounds was a reasonable use
18 of force under the circumstances at hand.[2] Therefore, Plaintiff can not show a constitutional
19 violation based on excessive force and thereby can not establish either individual or

---

[2] The Court notes that Coppess continuously argues that Officer French failed to follow policies when he let his canine subdue him. However, no such violation occurred as the policies Coppess refers to specifically allow officers to use canines as physical force where there is a serious threat to the safety of officers or others and where the crime at hand is of a serious nature. Both of these circumstances were present when Officer French found Coppess in his hiding place.

municipal liability in this case.³ Summary judgment is therefore granted in favor of Defendants as to personal and municipal liability under §1983.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Coppess' Motion for Summary Judgment (Doc. #47) is **denied**;

(2) Defendants' Cross-Motion for Summary Judgment (Doc. #50) is **granted**;⁴

(3) All other pending motions are **denied as moot**;

(4) This case is **dismissed with prejudice**;

(5) The **Clerk of the Court shall close the file in this case and enter judgment accordingly**.

DATED this 15th day of November, 2005.

_____
Cindy K. Jorgenson
United States District Judge

---

³The Court also notes that Plaintiff has failed to introduce any evidence showing that the City of Tucson has some official policy or custom which led to excessive force being used against him; thus, there could be no municipal liability in this case. Further, the Court notes that Officer French is entitled to qualified immunity in this case as "it would [not] be clear to a reasonable officer that his conduct was unlawful in the situation he confronted [in this case]." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

⁴As the parties did not request oral argument, the parties have had the opportunity to submit evidence and briefing, and the Court would not find oral argument helpful in resolving this matter, the Court found the pending motions for summary judgment suitable for decision without oral argument. *See* LRCiv 56.2; LRCiv 7.2(f); *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724, 728 (9th Cir. 1991)("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice" when oral arguments are not held on motions for summary judgment.).